## J. H. Cownie Glove Company v. Merchants' Dispatch Transportation Company, Appellant.

**Common carriers defined.** One who contracts to transport and deliver goods for another is a common carrier, irrespective of his ownership of the line or lines over which the same are to be transported.

**Liability for loss:** BURDEN OF PROOF. A common carrier is an insurer, except for loss occasioned by the inherent quality of or defect in the goods shipped, the act of God, the owner, or the public enemy: and he has the burden of showing that the loss resulted from one or more of these causes.

**Same:** IMPORTS: DUTIES. A carrier who agrees to deliver imported goods in bond, at an internal port of entry, is liable for damage to the goods while detained at the original port of entry, because of the carriers failure to prepare and file necesary clearance papers.

*Appeal from Polk District Court.*— Hon. James A. Howe, Judge.

WEDNESDAY, APRIL 4, 1906.

Suit to recover damages to a case of gloves shipped from Erlangen, Germany, to Des Moines, Iowa. Trial to a jury, and a verdict and judgment for the plaintiff. The defendant appeals.— *Affirmed.*

*Carr, Hewitt, Parker & Wright,* for appellant.

*Parrish & Dowell,* for appellee.

SHERWIN, J.— The plaintiff is an importer of gloves, and in March, 1901, it entered into an oral contract with the defendant, by which the defendant undertook to transport a case of gloves from the city of Erlangen, Germany, to Des Moines, Iowa, and deliver the same to the plaintiff in bond. For the purpose of carrying out the contract and to enable the defendant to direct and control the shipment, the plaintiff executed and delivered to the defendant a writing as follows: " Jacob Wiessner, Erlangen, Germany. Hereafter, and until further orders, please forward all of our goods in accordance with instructions you will receive from the Merchant's Dispatch Transportation Co., or their representative." Following the signature of the plaintiff to this order, the following also appears: " Please follow instructions relative to forwarding goods covered by above order in accordance with our letter of this date, and note — upper part of order to be filled out by consignee, lower part will be completed by Merchant's Dispatch Transportation Co., New York, when order is sent to their foreign representatives." The plaintiff subsequently ordered a case of gloves of said Weissner, which was delivered to the defendant in the city of Erlangen, about the 12th day of March, 1901. The goods were shipped from Hamburg for New York in the latter part of March, to be from there transported in bond to Des Moines, which is a port of entry

for imported goods. The goods were landed in New York in proper season, but, owing to a failure to comply with the customs regulations, they were kept there by the customs officials until late in the fall of the same year, and when they reached the plaintiff in Des Moines they were so badly damaged as to be of but slight value. The plaintiff claims that the contract required the defendant to deliver the goods in bond in Des Moines, and that this necessarily involved the duty of providing the papers necessary to clear them at the seaport entry, while the defendant insists that such duty rested on the plaintiff. The appellant alleges a large number of errors, and we shall discuss them without regard to the order of presentation in its brief.

I. The gloves were shipped " to order " and a draft made on the plaintiff, with bill of lading attached. The appellants therefore claim that title thereto did not vest in the plaintiff until payment of the draft and surrender of the bill of lading, and that the evidence does not show that the gloves were damaged after they became the property of the plaintiff. The gloves were damaged while they were in the customhouse in New York, and the evidence was sufficient to warrant the finding that the damage occurred after the plaintiff acquired ownership thereof.

The evidence also sufficiently showed that the defendant was a common carrier, and that the gloves were delivered to it as alleged. To constitute a common carrier, it 1. Common carriers defined. is not essential that the person or corporation undertaking such service own the means of transportation. If the contract is that the goods will be carried and delivered,. it makes the one so contracting a common carrier, regardless of the name or the ownership of the line or lines over which the service extends. Ray's Negligence of Imposed Duties, pages 6, 7; 6 ·Cyc. 369; *Buckland v. Express Co.*, 97 Mass. 124 (93 Am. Dec. 68); *Merchants' Dispatch Transportation Co. v. Bloch*, 86 Tenn.

392 (6 S. W. 881, 6 Am. St. Rep. 847) ; Lawson's Contract of Carriers, section 233.

The customs law (Act June 10, 1880, chapter 190, 21 Stat. 173 [U. S. Comp. St. 1901, page 1963]), provided that dutiable goods consigned to and destined for interior ports might immediately pass the port of first arrival without appraisement and liquidation of duties at the latter port, upon compliance with the requirements of section 4 of the act, and under the restriction of section 9 thereof, which were as follows:

Sec. 4.    That sections 2853 and 2855 of the Revised Statutes of the United States be, and the same are hereby, so amended as to require that all invoices of merchandise · imported from any foreign country and intended to be transported without appraisement to any of the ports mentioned in the seventh section of this act, shall be made in quadruplicate; and that the consul, viceconsul, or commercial agent, to whom the same shall be produced, shall certify each of said quadruplicates under his hand and official seal in the manner required by section 2855 of the Revised Statutes, and shall then deliver to the person producing the same two of the quadruplicates, one to be used in making entry at the port of first arrival of the merchandise in the United States, and one to be used in making entry at the port of destination, file another in his office there to be carefully preserved, and as soon as practicable transmit the remaining one to the collector or surveyor of the port of final destination of the merchandise.    .   .   .

Sec. 9.    That no merchandise shall be shipped under the provisions of this act after such merchandise shall have been landed ten days from the importing vessel, and merchandise not entered within such time shall be sent to a bonded warehouse by the collector as. unclaimed, and held regularly, entered and appraised.

A consular invoice was made as required by this act, but a quadruplicate thereof was not filed with the customs officials at the port of New York, and, as a consequence of such neglect, appraisement and liquidation of duties was

required at said port, occasioning the delay of which we have spoken, and the consequent damage to the gloves. If, under the contract of carriage, it was the defendant's duty to clear the goods at the port of New York, it is liable for the damages caused by their detention there, unless the plaintiff was bound to release them by payment of the duty. The plaintiff does not allege in its petition, nor is there evidence tending to show an express agreement as to the filing of clearance papers by either party, and, if that duty rested on the defendant, it was because of its contract to deliver the goods in bond in Des Moines, and because of its agreement to take exclusive charge of the shipment and to release the plaintiff from any care in connection therewith, so far at least as the clearance of the goods at New York was concerned. A careful examination and consideration of the evidence on this question satisfies us that the jury was warranted in finding therefrom that the defendant undertook to clear the goods at the port of first arrival, and that it was at fault in not doing so.

A common carrier is an insurer, except for a loss occasioned by the inherent quality of or defect in the goods shipped, the act of God, or of the owner, or the act of the public enemy. And the law casts upon the

2. LIABILITY FOR LOSS: burden of proof.

carrier the burden of proving that the loss resulted from one or more of these causes. Ray on Neg. of Imposed Duties, sections 2 and 10; *Hart v. Chicago & Northwestern R. Co.*, 69 Iowa, 485; *St. Clair v. C., B. & Q. R. Co.*, 80 Iowa, 304.

If Des Moines had not been a port of delivery, a simple contract to transport the goods from Erlangen to that destination would have created no obligation on the part of

3. SAME: imports: duties.

the carrier to pay the duties thereon, and a failure on the part of the owner thereof to do so would be an act excepting the carrier from liability, and in this connection we may as well notice the contention of the appellant that the plaintiff was bound to pay the duty

when he learned that the goods could not be cleared at New York without such payment. The court so instructed, and, whether right or wrong, it is the law of the case, so far as the appeal is concerned. We think, however, that the question whether the plaintiff could or should have paid the duty sooner, in the exercise of due diligence, was properly submitted to the jury and that its finding should not be disturbed.

It is urged there was such inconsistency between instruction one, which told the jury what the plaintiff must prove to make its case, and instruction six, which stated that if the defendant contracted to transport the goods and deliver them in bond in Des Moines, it was its duty to procure and file clearance papers, as to confuse and mislead the jury to the defendant's prejudice. There is no such inconsistency, as we view the record, for the latter instruction simply covered the defense insisted upon by the appellant. It is also said that the same instruction was erroneous because an agreement to deliver in bond in Des Moines did not impose on the defendant a duty to procure a clearance of the goods at New York; but what we have heretofore said disposes of the contention.

There is no merit in the appellant's contention that instruction seven assumed that there was a contract for the shipment of goods.

Some of the other instructions are criticised, but we think that as a whole they were fair and fully presented the questions in the case, and are sustained by what has already been said on the main proposition.

Complaint is made of the refusal to give some of the instructions asked by the defendant, but we find no error in the denial. So far as they contained the law applicable to the case, they were embodied in those given.

We have given the whole record and arguments careful examination, and find no error for which there should be a reversal of the case.

The judgment is therefore *affirmed*.

BISHOP, J., taking no part.