## UNITED STATES v. SIOUX CITY TERMINAL RY. CO.

(District Court, N. D. Iowa, W. D. August 11, 1916.)

### No. 106.

CARRIERS ☜37—CARRIAGE OF LIVE STOCK—TWENTY-EIGHT HOUR LAW.

Where the defendant railway company received hogs to transfer from one carrier to another, which had been confined for nearly 34 hours, the shipper having agreed that they might be confined for 36 hours, and defendant's agents, owing to the indistinctness of notations on the bill of lading, failed to discover that the hogs had been confined for nearly the maximum period, and kept them confined for more than the 36 hours, defendant was liable for a violation of the Twenty-Eight Hour Law (Act June 29, 1906, c. 3594, 34 Stat. 607 [Comp. St. 1913, §§ 8651–8654]), it appearing that two hours would have been a reasonable time for it to have transferred the hogs and unloaded them; the indistinct notation on the bill of lading not affecting defendant's liability.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. ☜37.]

At Law. Action by the United States of America against the Sioux City Terminal Railway Company, to recover a penalty for violation of the Twenty-Eight Hour Law. Judgment for plaintiff.

F. A. O'Connor, U. S. Atty., of New Hampton, Iowa, and Seth Thomas, Asst. U. S. Atty., of Ft. Dodge, Iowa.

Milchrist, Scott & Pitkin, of Sioux City, Iowa, for defendant.

REED, District Judge. The cause is submitted on the pleadings and a stipulation of facts, which reads substantially as follows:

That on the 8th day of January, 1915, at 12 o'clock noon, one J. Dimming loaded at the town of Sanders, in the state of Montana, 60 hogs into a car of the Northern Pacific Railway Company, consigned to Byron Clow at South Omaha, Neb., to be carried and delivered to the consignee at South Omaha; that said car left Sanders, Mont., for its destination at 12 o'clock noon, January 8, 1915, and was carried

by the Northern Pacific Railway Company, to the city of Mandan, N. D., and arrived there at 10 o'clock a. m. on January 9, 1915; that said hogs were unloaded at Mandan, and reloaded at said place at 6:30 o'clock p. m. mountain time on said January 9, 1915, and continued towards its destination, and arrived at Oakes, N. D., and was there transferred to the Chicago & Northwestern Railway Company, and transported by that company from that city to the city of Sioux City, Iowa, where it arrived at about 5 o'clock a. m. January 11, 1915, at which time said car was delivered to the defendant company; that the hogs were continued in the possession of the defendant company until the hour of 9:04 o'clock a. m. on said January 11th, at which time they were unloaded. It is agreed that the shipper made a written request that the time of confinement of the hogs in shipment might be extended to 36 hours. It is further stipulated that late in the afternoon of January 10, 1915, the employés of the Chicago, St. Paul, Minneapolis & Omaha Ry. Co. (the Chicago & Northwestern Railway) telephoned to defendant's transfer office at Sioux City the fact that there would arrive some time during the night 16 cars of sheep from Montana, upon which the time limit was nearly up, but said nothing about the car of hogs; that defendant's day yard clerk, just before going off duty at 6 o'clock p. m. on that day, notified defendant's night yard clerk of this information.

That about 5 a. m. January 11, 1915, the conductor of the train bringing in said sheep delivered to defendant's night yard clerk waybills for 30 cars; that said clerk inspected the bills, discovering the billing for 16 cars of sheep, and notified the foreman of the switching crew of conditions; that defendant's switching crew thereupon switched and unloaded said 16 cars of sheep, giving the same preference over other cars, and completed unloading them within the time limit; that the car in question containing the 60 hogs came in on the same train, was located near the rear of the train, and the 16 cars of sheep were located in the forward part of the train; the indorsement of the last loading upon the waybill in question was so dim and indistinct as to be scarcely noticeable; that defendant's night yard clerk did not notice said indorsement or discover that there was a carload of hogs with the time limit nearly expired, and for that reason did not include the same in the emergency notice given in respect to the sheep; that defendant's switching crew for that reason did not attempt to handle said hogs out of order, but in regular order of receipt, and did not discover that the time limit had expired in time to have unloaded them within the time limit.

It is further agreed that 2 hours is a reasonable period of time for the defendant to deliver stock from its junction with the Northwestern Railway to the Sioux City Stockyards, and for unloading the same.

It thus appears that the carload of hogs in question was confined without being unloaded for proper food, water, and rest, from 6:30 p. m. mountain time, January 9, 1915, until 5 a. m., January 11th, when they were received by the defendant at Sioux City, and were thus confined for 34 hours and 30 minutes, or deducting 1 hour for differ-

ence in time, 33 hours and 30 minutes; so that defendant received the stock 2 hours and 30 minutes before the expiration of the 36-hour period, and detained them without unloading until 9:04 o'clock a. m., thus having the stock in its custody for a period of 4 hours and 4 minutes. The defendant, therefore had the hogs in its custody 2 hours and 30 minutes before the expiration of the 36-hour period, and detained them beyond that period for 1 hour and 34 minutes, or in all 4 hours and 4 minutes after it received them, and that 2 hours would be a reasonable time for unloading the hogs after it received them at 5 o'clock a. m.

It is also stipulated that the billing of the hogs showing the time they were reloaded at Mandan was so indistinct that defendant's employés failed to discover the time noted upon the bill. The defendant, therefore, received the stock 2 hours and 30 minutes before the expiration of the 36-hour period, and detained it beyond that period 1 hour and 34 minutes. Under the ruling in United States v. Sioux City Stockyards Co. (C. C.), 162 Fed. 556, and St. Joseph Stockyards Co. v. United States, 187 Fed. 104, 110 C. C. A. 432, the defendant incurred the penalty for detaining this carload of hogs beyond the 36-hour period without unloading them for food, water, and rest, and is liable for such penalty.

The indistinct notation upon the bill of lading of the time the stock was last reloaded at Mandan is not, of course, a defense to the action, and it can only be considered, if at all, in mitigation, and it may be doubtful under the facts stipulated if it ought to be so considered; for employés of interstate railways must not detain live stock in transportation from one state to another beyond the 28 or 36 hour period, except as provided in the 28-hour law.

The plaintiff is entitled to recover of the defendant $100, and costs, and judgment is accordingly ordered therefor.