Highway Freight Co., Appellant, v. P. S. C.

Argued November 1, 1932.

Before TREXLER, P. J., KELLER, GAW-THROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Harold S. Shertz,* for appellant.—Freight forwarders are not common carriers: Interstate Commerce Commission v. D. L. & W. R. R., 220 U. S. 235; Interstate Commerce Commission in California Commercial Association v. Wells, Fargo & Co., I. C. C. 422; Frost v. Commission, 271 U. S. 583.

*E. Everett Mather, Jr.,* Assistant Counsel, and with him *John Fox Weiss,* Counsel, for appellee.—To con-

stitute a common carrier, it is not essential that the person or corporation undertaking such service owns the means of transportation: Blakiston v. Davies, Turner & Company, 42 Pa. Superior Ct. 390; Resnick & Cohen v. Firth, 73 Pa. Superior Ct. 604.

*Sterling G. McNees,* for Alko Express Lines and Certificated Motor Carriers of Pennsylvania, intervening appellee.

OPINION BY TREXLER, P. J., March 3, 1933:

The case arises by reason of a complaint filed before the Public Service Commission by the Alko Express Lines in which it is alleged that the Highway Freight Forwarding Company having no certificate of public convenience authorizing it to render service as a common carrier service by motor truck is in violation of law transporting or causing to be transported freight and merchandise between various places in this state served by the complainant and in so doing is employing various truck operators. The reply of the Highway Freight Forwarding Company is that it was not subject to the provisions of the Public Service Law and in carrying on the business of a freight forwarder, handler and warehouser is merely acting as agent for the shipper or consignee and is not a common carrier. The Public Service Commission decided it was a common carrier, and on this appeal the only question before us is; is the appellant a common carrier—or a mere forwarding agent of the shipper?

The Public Service Company Law of July 26, 1913, P. L. 1374 defines common carrier as one "engaged for profit in the conveyance of passengers or property or both between points within the Commonwealth by, through, over, above or under land or water, or both." The term 'conveyance of passengers or

property' as used in this act includes any and all service in connection with the receiving, transportation, elevation, transfer in transit ventilation, refrigeration icing, storage, handling and delivering of property baggage or freight as well as all service in connection with the transportation or carrying of passengers.'' The appellant receives goods coming to it from various shippers, some brought by the consignors, some "picked up" by a draying company designated by the appellant, it usually retains them for a time at its warehouse and then transfers them to trucks owned by individuals or corporations who deliver the merchandise to the consignees. It makes the contract in its own name with the shippers and engages to transport from one end of the journey to the other, and in turn makes the contract with the persons or corporations to whom it sublets the task. It makes its profits not from any commission or fee paid by the consignor or consignee, but from the difference between the amount it has to pay to have the work done and the amount it receives from the persons with whom it contracts for the carriage.

To constitute a common carrier it is not essential that the person or corporation undertaking such service owns the means of transportation. Blakiston v. Davies, Turner & Co., 42 Pa. Superior Ct. 390. In the present case the engagement was to carry to the destination. The appellant published a tariff of regular rates for various kinds of freight between the several points designated. As between the consignor and the appellant there was no apportionment of the rewards of service among those participating, but the appellant company made a lump charge covering the whole transportation. As stated, it received the goods at its place of business in Philadelphia and stored them until it accumulated sufficient quantity to warrant a profitable shipment. It then selected the carrier who

was to transport the goods to destination sometimes selecting a common carrier and occasionally a private carrier. It assumed responsibility for the goods carried at least in so far as it insured them. It would seem beyond question, although appellant argues strenuously to the contrary, that the appellee acted not as agent but as an independent actor, having full control and answerable for the safe delivery at destination of the merchandise entrusted to it. The documentary evidence supports this conclusion. The freight bills give point of origin and destination, the terms of credit, or C. O. D., as the case may be, and the appellant company assumes responsibility for the collections that are to be made. The freight bill or bill of lading is an engagement to deliver. These bills are not mere receipts, but they constitute an engagement to transport, are issued in triplicate, one copy going to the shipper on receipt of the goods, one going with the goods as a waybill and the third to the consignee to be signed, evidencing delivery. The facts above narrated make the appellant a common carrier.

10 C. J. Section 27 (p. 50) draws the distinction between a forwarding agent and a carrier:  ·

"A mere forwarding agent who does not receive goods into his custody, but, as agent for the shipper merely contracts for their transportation by carriers, and who has no interest in the freight but receives compensation from the shipper as his agent, is not a common carrier, and he is liable only for want of ordinary care ...... But an alleged forwarding agent who receives goods for transit, issues bills of lading, makes contracts in his own name with a railroad company for carriage, is, as to a person with whom he contracts for the delivery of goods, a common carrier and liable as such."

The industry of counsel for the intervening appel-

lee has presented us with a number of authorities from other jurisdictions supporting the position taken by the Public Service Commission. It will suffice to refer to only one at any length. It is the leading case of Kettenhofen v. Globe Transfer & Storage Co. 127 Pac. 295. The court held that the defendant in that case was engaged in common carriage, and was subject to the rules governing common carriers. Its relevance to the present discussion will appear in the following quotation from the opinion of the court:

"...... A thorough examination of the evidence leads to the sure conclusion that the contract was one for a through shipment from the residence of the respondents, in the City of Seattle, to the City of Milwaukee. The means to that end were left entirely to the appellant's selection and control. The goods were delivered with no other direction expressed or implied. Neither the service on the one hand nor the compensation on the other was segregated, itemized, or separately considered. It was a contract for a through shipment at a rate to be fixed by the appellant. The goods were not delivered for mere forwarding to the railroad company, nor for storage in a warehouse. They were delivered for shipment by whatever route the appellant might find most to its advantage, and in a car of its own procuring. In this branch of its business the appellant was exercising the employment of receiving, carrying, and delivering goods, wares, and merchandise as an occupation, and for all people indifferently. By its contract it assumed the entire control of the goods, severing the respondent's connection therewith until delivery at the place of destination. Such was the ordinary course of its business, and such was the plain purport of the contract.'" A number of cases on the same subject and supporting the same conclusion will be found in the copious notes on the above case in 42 L. R. A.

(N. S.) 902. It will not be necessary to make particular reference to them here. The only case called to our attention in which the merchandise was not forwarded by rail, but, as in the instant case, by truck is that of Larkin *v*. P. U. C. of Ohio, 180 N. E. 54. In that case the court found the forwarder, so-called, to be a common carrier basing its conclusion on the fact that although he did not own the means of transportation, he exercised a positive supervision and direction over the trucking, and that a contract to provide for transportation is equivalent to a contract to transport.

The order of the Public Service Commission is affirmed.