Amy Vanderbilt, Plaintiff, v. Chelsea Fireproof Storage Warehouses, Inc., Defendant.

City Court of the City of New York, Trial Term, New York County, June 29, 1948.

*Vera Boudin* and *Sidney E. Cohn* for plaintiff.

*Reid A. Curtis* for defendant.

Coleman, J. This is an action by the plaintiff to recover the value of certain household goods which the plaintiff turned over to the defendant for storage in New York. Several weeks later, at the plaintiff's request, the defendant acting as a carrier, transported the goods to the plaintiff's home in Connecticut. Because I thought, contrary to the defendant's contention, that the defendant was liable as carrier and that it had not effected any limitation of its liability as carrier, I put to the jury the only issue I believed to be open — the amount of the plaintiff's loss. There was a verdict for the plaintiff and the question of the correctness of my ruling is now before me.

It is, of course, true that there is nothing to show when the plaintiff's household goods were lost and damaged, nothing to show whether the loss and damage occurred while they were in the defendant's possession first as warehouseman or later

as carrier. It is equally true that it is impossible from the nature of the case for the plaintiff to be able to present such proof. But there was in fact loss and damage. In such circumstances the liability of the defendant, to whose care the plaintiff's property was entrusted, must be measured by the rule of absolute liability resting on a carrier rather than by the more favorable rule applicable to a warehouseman. Proof of nondelivery was enough in the first instance to impose liability upon the defendant either as warehouseman or carrier. But there was no gap in the period of time in which the goods were in the defendant's possession. There are only different rules of liability and, if the defendant, which says that in its capacity of carrier it tendered to the plaintiff all the belongings it received as warehouseman, wishes to avoid its liability as carrier for part of that time, it is only reasonable to ask it to show that the loss occurred while the goods were in its possession as warehouseman. (*Schnell* v. *The Vallescura,* 293 U. S. 296; cf. *Commercial Molasses Corp.* v. *N. Y. Tank Barge Corp.,* 314 U. S. 104.) This is putting no greater burden on it than is imposed on any warehousemen; he at least must show what he did with other person's property while it was in his possession. Here the defendant should show that it had the goods in its possession when it assumed to act as carrier and in default of any such showing it must, with relation to the plaintiff, be considered a carrier. The principle is the same as in *The Vallescura* (293 U. S. 296, *supra*) where damage to cargo having been caused partly through the vessel's negligence and partly from a sea peril for which the vessel was not responsible, the burden was on the vessel to show what part of the damage was due to sea peril, and because of its inability to do so it was liable for the full damage. This conclusion makes it unnecessary to consider the clauses in the warehouse receipt attempting to limit the defendant's liability as warehouseman.

As carrier the defendant's liability, of course, is absolute unless it gave the plaintiff an opportunity to yield some of her rights against it by making an agreement of the kind permitted by the laws relating to interstate transportation of goods. (Carmack amendment, as amd. by the two Cummins amendments; U. S. Code, tit. 49, § 20, subd. [11]; Motor Carrier Act of 1935; U. S. Code, tit. 49, § 319; *Union Pacific Railroad Co.* v. *Burke,* 255 U. S. 317, 321.)

The defendant says that the goods were carried at a lower rate and that its liability was correspondingly limited, that the

plaintiff had an opportunity to "purchase" a greater liability by paying a higher rate of freight. But there was neither agreement to diminish the defendant's liability, nor opportunity to do so. The plaintiff turned over her belongings to the defendant in New York, there to be stored until she asked for their delivery to her at her home in Connecticut. She next saw these belongings in Connecticut where before they were turned over to her as consignee, she was required to sign a shipping order and a bill of lading as consignor, and to pay as consignee the freight charges called for by the bill of lading. These charges were such that in a proper case the defendant's liability might have been curtailed; but the documents had been prepared by the defendant in New York and were presented to the plaintiff for signature after the defendant had already completed its duty to carry and there remained only its duty to deliver. It is idle to contend that in those circumstances the plaintiff agreed to any curtailment of the defendant's liability or that she had any choice in the matter at all. (Cf. *Caten* v. *Salt City Movers & Storage Co.*, 149 F. 2d 428.) Indeed, by the rules of the Interstate Commerce Commission, she was required to pay the charges before the goods would be delivered to her. The carrier's liability remained absolute and the defendant is liable for the full amount of the loss found by the jury.