**Mrs. R. Cattier CUTTEN, also known as Mrs. Ruth L. Cutten, Plaintiff,**

**v.**

**ALLIED VAN LINES, INC., a corporation and Morgan and Brother Manhattan Storage Company, Inc., a corporation, Defendants.**

**Civ. No. 71–2996.**

United States District Court,
C. D. California.

Oct. 10, 1972.

Macdonald, Halsted & Laybourne and Robert H. Edwards, Los Angeles, Cal., for plaintiff.

Spray, Gould & Bowers and Phillip Hosp, Los Angeles, Cal., for defendant Allied Van Lines, Inc.

Groff, Dunne, Shallcross & Kane and Mark C. Kane, for defendant Morgan and Brother Manhattan Storage Co., Inc.

## DECISION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, District Judge.

The Court having considered the evidence, including the stipulations and admissions of the parties, and arguments of counsel finds the facts and states its conclusions of law as follows:

## FINDINGS OF FACT

1. During the year 1970 plaintiff was, and at all times since has been, a citizen of the State of California and a resident of the County of Los Angeles, State of California.

2. Defendant Allied Van Lines, Inc. (Allied Van Lines) is a corporation organized and existing under the laws of the State of Delaware and at all times mentioned herein has maintained its

principal place of business in Cook County, State of Illinois.

3. Defendant Morgan and Brother Manhattan Storage Company, Inc. (Morgan-Manhattan) is a corporation organized and existing under the laws of the State of New York and at all times mentioned herein has maintained its principal place of business in New York County, State of New York.

4. During the year 1970 Allied Van Lines was engaged in the business of interstate common motor carrier in the States of New York and California and elsewhere in the United States.

5. During the year 1970 Morgan-Manhattan held itself out to the general public, including plaintiff, as being engaged in the transportation by motor vehicle interstate of property for compensation.

6. During August of 1966 Morgan-Manhattan packed all of plaintiff's household goods (plaintiff's household goods) located at plaintiff's residence on Park Avenue in New York City, and stored them in its New York City Warehouse.

7. During the period between August 1966 and November 23, 1970, Morgan-Manhattan held in its possession, custody and control plaintiff's household goods and did not damage or lose any item thereof.

8. During October 1970 plaintiff, who was in California, gave an order by telephone to Morgan-Manhattan to ship all of plaintiff's household goods (except a piano) to her at her residence in California. On November 17, 1970, when it acknowledged payment of storage and packing charges, Morgan-Manhattan accepted plaintiff's order to transport plaintiff's household goods from the State of New York to the State of California.

9. On November 23, 1970, Morgan-Manhattan removed plaintiff's household goods from the rooms in the warehouse where they were stored and loaded them into Van 3309A which was owned by Morgan-Manhattan.

10. At all times during November and December of 1970, Frank Schramel was a salaried employee of Morgan-Manhattan and his activities were subject to the supervision, direction and control of Morgan-Manhattan including loading into Van 3309A plaintiff's household goods and transporting interstate such household goods to their destination in California.

11. During 1970 Schramel also acted as driver for Allied Van Lines on long haul interstate transportation by motor carrier pursuant to regulations of the Interstate Commerce Commission. Schramel received compensation based on a percentage of the revenues earned from each such interstate transportation which compensation was paid to him by Morgan-Manhattan.

12. On November 23, 1970, after plaintiff's household goods were loaded by Morgan-Manhattan into Van 3309A, Morgan-Manhattan issued bill of lading and freight bill No. 92961 (the bill of lading) covering the transportation of plaintiff's household goods from Morgan-Manhattan's warehouse in New York City to plaintiff's residence in Beverly Hills, California. Plaintiff is the lawful holder of bill of lading. The bill of lading was issued by Morgan-Manhattan as issuing agent for Allied Van Lines in accordance with a long established contractual arrangement whereby Morgan-Manhattan acted as agent for Allied Van Lines in the shipment of household goods. An employee of Morgan-Manhattan signed the bill of lading as the "shipper" and released the shipment of plaintiff's household goods to a value not exceeding $30,000.

13. On November 23, 1970, an employee of Morgan-Manhattan checked out plaintiff's household goods and made out a delivery receipt dated November 23, 1970, which Schramel signed. The delivery receipt contained an inscription reading "out A.V.L. Morgan & Manhattan—F. Schramel to California". Schramel wrote a seven page "Household Goods Descriptive Inventory" of plain-

tiff's household goods upon which appear the same numbers, descriptions of goods and symbols as to condition at origin which appear on the delivery receipt. Schramel wrote and signed an eighth page entitled "Drivers Exception Sheet" on which he noted the condition at origin of certain numbered items. The Household Goods Descriptive Inventory including the page entitled Drivers Exception Sheet bearing the following explanation of the symbols: "The omission of these symbols indicates good condition except for normal wear" were attached to the bill of lading.

14. On November 23, 1970, Morgan-Manhattan first loaded into Van 3309A plaintiff's household goods which required a space of 2500 cubic feet and which were secured by means of ropes and straps with the lighter items being stacked on top of the heavier items. Thereafter Morgan-Manhattan loaded into Van 3309A five separate shipments of household goods owned by other persons who resided in New York City and various cities in the State of New Jersey which shipments were to be transported to various destinations in California. About December 3, 1970 Van 3309A arrived in California. On December 4, 1970 plaintiff's household goods were delivered to her residence in Beverly Hills, California. Prior to such delivery the other five shipments were delivered to their destinations in California. Plaintiff paid all charges for transportation mileage and for the valuation of $30,000 on plaintiff's household goods.

15. In the transportation of plaintiff's household goods from the place of loading in the State of New York to their destination in the State of California in Van 3309A Morgan-Manhattan and Allied Van Lines acted individually and jointly as interstate common motor carriers. Schramel was the driver of Van 3309A during such transportation.

16. On December 4, 1970 Morgan-Manhattan and Allied Van Lines delivered to plaintiff at her residence in California certain items of plaintiff's house-

hold goods in damaged condition (damaged items) and failed to deliver other items thereof (lost items). At the time the damaged items and the lost items were loaded into Van 3309A on November 23, 1970 they were sound and in good condition. No Exception Symbol appears in the Household Goods Descriptive Inventory or in the Driver's Exception Sheet in connection with any of the damaged items or any of the lost items.

17. The amount of damages sustained by plaintiff, that is, the decrease in the fair market value of the damaged items, is as follows:

| | |
|---|---:|
| (a) Antique French Louis XV Game Table. | $ 850 |
| (b) Antique Louis XVI sofa upholstered in red silk with cushions, 6' 6" long. | $ 462 |
| (c) Antique massive round Waterford cut-glass centerpiece. | $ 425 |
| (d) Four French Limoges place plates, gold shell rims, hand painted in colors. | $ 200 |
| (e) Russian colored enamel on copper framed plaque, "St. George Slaying the Dragon". | $ 250 |
| (f) Pair Chinese pale green jade oval table screens. | $ 600 |
| (g) Pair of reticulated and carved teakwood fitted stands for above. | $ 50 |
| (h) Pair of antique Adams carved and green lacquer console tables, Rams' heads on two forelegs, terminating in hoof feet; slab marble tops with colored inlays. | $2,500 |
| (i) Louis XV style inlaid Kingwood and Tulipwood writing table. | $2,500 |
| (j) Pair of antique French Provincial carved fruitwood side chairs with scrolled legs, upholstered in red velvet. | $1,250 |
| (k) Pair of antique Chinese Porcelain Ewers; On the shoulders a crawling lizard. | $2,000 |
| (l) Louis XVI fruitwood sofa, covered in red silk velvet with braid, down-filled seat cushion and two roll bolsters. | $ 500 |
| (m) Regency Inlaid Kingwood Serpentine Front Commode, mounted in bronze dore, French Rouge royale marble top with serpentine front over a conforming encasement with two short and two long drawers. | $2,500 |
| (n) Four French farmstyle antique side chairs, in fruitwood, upholstered in gold velvet. | $1,500 |

18. The amount of damages sustained by plaintiff as the result of certain

items having been lost, that is, the fair market value of the lost items, is as follows:

| | | |
|---|---|---|
| (o) | Table lamp: Dore mounted, etched crystal baluster shaft on round base. | $ 350 |
| (p) | Twelve Old English floral etched and cut-glass champagne glasses. | $ 480 |
| (q) | Four Hawkes red wine glasses. | $ 120 |
| (r) | Old pictorial polychromed ceramic and ivory table lamp; baluster shaft on domicular base. | $ 500 |
| (s) | Eight Limoges acid etched and gold encrusted place plates. | $ 320 |
| (t) | Pair of English sterling silver vegetable dishes with covers. | $ 500 |

19. On or about August 13, 1971 plaintiff filed with each defendant a claim in writing for loss and damage as required by the bill of lading. On or about August 20, 1971 plaintiff received notice in writing from defendant Allied Van Lines that her claim was disallowed.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter of this action and the parties thereto by virtue of Sections 20(11) and 319 of the Interstate Commerce Act (49 U.S.C. Sections 20(11) and 319) and Sections 1331 and 1332 of the Judicial Code and Judiciary (28 U.S.C. Sections 1331, 1332).

2. Plaintiff has carried her burden of proof. Neither defendant has carried its burden of proof with regard to any defense.

3. The conduct of Morgan-Manhattan in holding itself out to the general public, including plaintiff, as being engaged in the transportation by motor vehicle interstate of property for compensation brought it within the definition of interstate common carrier by motor vehicle and as such carrier it became liable for loss of or damage to an interstate shipment pursuant to the Interstate Commerce Act.

Interstate Commerce Act, Sections 303 (a), 319, 20(11), (49 USC Sections 303(a), 319, 20(11)); 13 American Jurisprudence 2d, Section 7 (carriers); Lloyd v. Haugh & Keenam Storage & Transfer Co., 223 Pa. 148, 72 A. 516 (1909); Walton v. A.B.C.

Fireproof Warehouse Co., 235 Mo.App. 939, 151 S.W.2d 494 (1941); Highway Freight Forwarding Co. v. Public Service Commission, 108 Pa.Super. 178, 164 A. 835 (1933); Cownie Glove Co. v. Merchants Dispatch Transportation Co., 130 Iowa 327, 106 N.W. 749 (1906); Vanderbilt v. Chelsea Fireproof Storage Warehouses, Inc. (City of New York, 1948) 192 Misc. 143, 80 N.Y.S.2d 302; United States v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567 (1936).

4. Morgan-Manhattan assumed the status of interstate common carrier by motor vehicle from the time of its acceptance of plaintiff's order for transportation (November 17, 1970) at which time it had possession, custody and control of plaintiff's household goods constituting complete delivery thereof.

13 American Jurisprudence 2d Section 255 (carriers); Charles J. Webb & Sons v. Central R. Co., 36 F.2d 702, 703 (2d Cir. 1929); American Sugar Refining Co. v. Illinois Cent. R. Co. 103 F.Supp. 280, 285 (E.D.La.1952); Snelling v. Yetter, 25 A.D. 590, 49 N. Y.S. 917 (Supreme Court Appellate Division 1898), 163 N.Y. 601, 57 N.E. 1124

5. The issuance of the bill of lading by Allied Van Lines through its issuing agent Morgan-Manhattan imposed upon Allied Van Lines liability to plaintiff as the lawful holder thereof for any loss of or damage to plaintiff's household goods, during transportation in interstate commerce.

Interstate Commerce Act, Sections 319, 20(11) (49 U.S.C. Sections 319, 20 (11))

6. Plaintiff established a prima facie case against Morgan-Manhattan and Allied Van Lines as interstate common carriers by showing delivery of her household goods to them in good condition, arrival of some items in damaged condition and the non-arrival of other items, and the amount of damage including the value of items not delivered. Thereupon the burden of proof

was upon each carrier to show both that it was free from negligence *and* that the damage was due to one of the excepted causes relieving the carrier of liability.

> Interstate Commerce Act, Sections 319, 20(11), (49 U.S.C. Sections 319, 20(11)). Missouri P.R. Co. v. Elmore & Stahl (1964) 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194.

> The issuance by a carrier of a bill of lading without a notation thereon of visible damages or defects in the items of household goods as to which loss or damage is claimed creates a presumption or prima facie case of good condition when received. 14 American Jurisprudence 2d Section 619 (carriers); Minneapolis F & M Ins. Co. v. B & O R Co. (1952) 237 Minn. 111, 53 N.W.2d 828, 33 A.L.R.2d 860; Yeckes-Eichenbaum, Inc. v. Texas Mexicana Ry. Co. (5th Cir. 1959) 263 F.2d 791; cert. den. 361 U.S. 827, 80 S.Ct. 75, 4 L.Ed.2d; Schraeder v. Robinson (Cal. DCA 1947) 78 Cal.App.2d 328, 177 P. 2d 788. General Electric Co. v. Penn RR Co. (W.D.Pa.1958) 160 F.Supp. 186

■ 7. In the transportation of plaintiff's household goods out of storage in New York to their destination in California Morgan-Manhattan and Allied Van Lines acted jointly for their mutual benefit subject to the Interstate Commerce Act and as such became jointly and severally liable to plaintiff for damages and losses.

> 13 American Jurisprudence 2d Sections 7, 13, 17 (carriers); United States v. Brooklyn Eastern District Terminal, 249 U.S. 296, 307, 39 S.Ct. 283, 63 L.Ed. 613, 617; Union Stock Yard & T. Co. v. United States, 308 U. S. 213, 60 S.Ct. 193, 84 L.Ed. 198. Where the Court said:

> "It is not important, as appellant seems to think, that, as an incident to the service it renders to shippers and to the line-haul carriers, it acts as agent of the latter. The character of the service, in its relation to the public, determines whether the calling is a public one, and a common carrier does not cease to be such merely because in rendering service to the public it acts as the agent of another. United States v. Brooklyn Eastern Dist. Terminal, supra 249 U.S. [296] 307, 39 S.Ct. 283, 63 L.Ed. [613] 617, 16 A.L.R. 527. Connecting common carriers frequently act in that capacity for each other without losing their status as such."

> See also 46 American Jurisprudence 2d Sections 7–14, 57–58 (Joint Ventures)

■ 8. Morgan-Manhattan and Allied Van Lines are, individually and jointly, liable to plaintiff in the amount of $17,857 for damages to and loss of plaintiff's household goods during transportation thereof from New York to California.

> 14 American Jurisprudence 2d Section 563 (carriers); Steamship Ansaldo San Georgio v. Rheinstrom Bros. Co., 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016 at 1020 in which the U.S. Supreme Court held that damages are computed in the usual way but cannot exceed the agreed limit of value.

■ 9. Plaintiff is entitled to recover prejudgment interest at the rate of 7% per annum on $17,857 from the date of the filing of plaintiff's complaint on December 20, 1971 until the judgment entered herein in favor of plaintiff shall be paid, that is, $941.77 as of September 20, 1972 plus a sum equivalent to $3.42 multiplied by the number of days between September 20, 1971 and the date judgment shall be paid. Plaintiff is also entitled to recover costs.

> In the federal courts the rule is that the trial court may in the exercise of sound discretion include interest upon unliquidated damages as an element of damages. Continental Oil Co. v. United States (CCA 9th 1950) where the court said (p. 822):

> "It is our view that it was for the trial court to determine as a question of fact the amount of the Government's loss on this item. We think it

was a situation such as that discussed in Miller v. Robertson, 266 U.S. 243, at page 258, 45 S.Ct. 73, at page, 78, 69 L.Ed. 265, where the court said: 'Generally, interest is not allowed upon unliquidated damages. * * * But when necessary in order to arrive at fair compensation, the court in the exercise of a sound discretion may include interest or its equivalent as an element of damages.' "

In Gardner v. Mid-Continent Grain Co. (CCA 8th Cir. 1948) the court held (p. 824):

"Interest may be allowed as compensation for delay in paying the damages from delay in transportation, under the Carmack Amendment, 49 U.S. C.A. § 20(11), whether the technical form of the action is in contract or tort recovery."

The legal rate of interest in California for the detention of money is 7 per cent per annum. Sears, Roebuck & Co. v. Blade 139 CA2d 580, 596 (1956).

In 1967 Section 3287 of the California Civil Code was amended by adding subdivision (b) which provides:

"(b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed."

In accordance with the findings of fact and conclusions of law hereinabove made by the Court,

It is ordered and adjudged that plaintiff recover from defendants Allied Van Lines, Inc., and Morgan and Brother Manhattan Storage Company, Inc., individually and jointly, the sum of $17,857.00 together with interest thereon at the rate of 7 per cent per annum from December 20, 1971 until the date said sum of $17,857 with said interest shall be paid; and that plaintiff shall recover costs of suit incurred herein.