## McCALLUM et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. April 21, 1924. Rehearing Denied
May 26, 1924.)

No. 4130.

1. **Courts ☞303(2)—Action in tort against state board held not "suit against state," and cognizable by federal court.**

Action by United States against board of state harbor commissioners to recover penalties for violations of federal Safety Appliance Act March 2, 1893 (Comp. St. §§ 8605–8612), and amendments, in operation of State Belt Railroad, was action in tort for wrongful acts which could not have been authorized by state, and was not action against state, within Const. U. S. Amend. 11, and is cognizable by federal court.

[Ed. Note.—For other definitions, see Words and Phrases. First and Second Series, Suit against the State.]

2. **Commerce ☞27(2)—State Belt Railroad held "common carrier," engaged in "interstate commerce," and must comply with federal Safety Appliance Act.**

The State Belt Railroad, traversing San Francisco harbor front and belonging to state, *held* a "common carrier," engaged in "interstate commerce," where, it served all carrier routes and moved freight in loaded cars for shipment of goods in interstate commerce, though it issued no bills of lading, receipts, or invoices, and simply rendered switching services at a certain rate per car, and it must comply with federal Safety Appliance Act March 2, 1893 (Comp. St. §§ 8605–8612).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Common Carrier; Interstate Commerce.]

In Error to the District Court of the United States for the Southern Division of the Northern District of California; Geo. M. Bourquin and Wm. C. Van Fleet, Judges.

Action by the United States against John H. McCallum and others, constituting the Board of State Harbor Commissioners of the State of California, operating the State Belt Railroad. From an adverse judgment (281 Fed. 834), defendants bring error. Affirmed.

W. T. Plunkett, of San Francisco, Cal., for plaintiffs in error.

J. T. Williams, U. S. Atty., and Thomas J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., and M. C. List, Sp. Asst. U. S. Atty., of Washington, D. C.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. The United States, at the request of the Interstate Commerce Commission brought an action to recover from the defendants, the board of state harbor commissioners of the state of California, penalties alleged to have been incurred by them for violations of the federal Safety Appliance Act of March 2, 1893, 27 Stat. 531 (Comp. St. §§ 8605–8612), and the amendments thereto, committed in the operation of the State Belt Railroad, a railroad traversing the San Francisco harbor front and belonging to the state. The defendants answered, denying the jurisdiction, in that the suit was in fact brought against the state of California and a political and governmental agency of the state. The answer also denied that the board was a common carrier, or engaged in interstate commerce by railroad,

and upon information and belief it denied the alleged violations of the Safety Appliance Act. Upon the trial a verdict was rendered for the plaintiff and judgment was thereon rendered for the plaintiff in the sum of $200.

[1] We think that the court below properly held that the action was not an action against the state and that the court's jurisdiction thereof was not forbidden by the Eleventh Amendment to the Constitution. It is conceded that the board is an agency of the state, and that as such it conducts the business of the state on the water front and manages the State Belt Railroad. But this is not a case in which the members of the board were acting within the power and duty vested in them by law, or in pursuance of authorization from the state. It is an action in tort to recover penalties for wrongful acts committed in violation of a law of the United States, not by the state, but by individuals acting as its servants. The state could not and did not authorize the commission of such wrongful acts, and immunity of the state from suit does not relieve state officers from responsibility for their unlawful action. In Hopkins v. Clemson College, 221 U. S. 636, 31 Sup. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243, the court declared immunity from suit to be "a high attribute of sovereignty—a prerogative of the state itself—which cannot be availed of by public agents when sued for their own torts." The principle is illustrated in numerous decisions, among which are Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 962, 29 L. Ed. 185; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Johnson v. Lankford, 245 U. S. 541, 38 Sup. Ct. 203, 62 L. Ed. 460; Looney v. Crane Co., 245 U. S. 178, 38 Sup. Ct. 85, 62 L. Ed. 230.

[2] The trial court, over the defendants' exception, granted the plaintiff's motion for a directed verdict in its favor. That ruling is assigned as error, and it is contended that the Belt Railroad was not engaged in interstate commerce, since it served all carrier routes alike and charged therefor only a switching rate for hauling loaded and empty freight cars or rolling stock belonging to such carrier roads, and its service to the railroads commenced and ended with the receipt from or delivery to the carrier road, of the cars to be hauled, and the movement in interstate commerce also began and ended with the surrendering or receipt of the cars of the carrier road to or from the Belt Railroad, as the case might be. The evidence showed that the Belt Railroad received cars from the Southern Pacific, the Western Pacific, the Atchison, Topeka & Santa Fé, and the Northwestern Pacific, but that such railroads were not permitted to operate on the Belt Railroad tracks, excepting that the Southern Pacific delivered cars on the Belt Railroad's transfer track, that the Belt Railroad moved freight in loaded cars to and from 43 wharves for shipments of goods in interstate commerce, and that it delivered freight from 175 industries on its line to these 43 wharves for shipment on steamers, and freight from these wharves to the industries, and that it hauled cars between the other railroads and the docks, and cars belonging to railroads operating wholly

without the state of California, and that it hauled baggage cars and Pullman cars; and while the Belt Railroad issued no bills of lading, or receipts, or invoices, it did issue bills and receipts for switching and the services rendered were paid for at the rate generally of $3.50 for a loaded car, $2.25 for an empty car, $5 for a loaded baggage car, and $10 for a Pullman car.

In brief, the evidence shows that the Belt Railroad is engaged in business as a common carrier, that it carries cars for hire, that it is one of the connecting links between consignors and consignees of freight in interstate traffic, and that its services are open to the public. The case is not unlike that of United States v. Brooklyn Terminal, 249 U. S. 296, 39 Sup. Ct. 283, 63 L. Ed. 613, 6 A. L. R. 527. The Terminal operated a union freight station under individual contracts with ten interstate railroads and several steamship companies, receiving from the railroads carload and less than carload freight, and transporting the same from their termini to its Brooklyn docks for unloading, and receiving from shippers similar freight originating at Brooklyn and consigned to points upon the various railroads. For its services in handling the freight it received its pay on a percentage basis from the railroad or steamship company upon whose account the service was performed. It denied that it was a common carrier. The court ruled that whether a carrier is a common carrier within the meaning of the Hours of Service Act does not depend upon whether its charter declares it to be such, nor upon whether the state so considers it, but upon what it does, and that the fact that it acts only as agent for other carriers cannot change its obligation under the act. Said the court:

"We need not undertake a definition of the term 'common carrier' for all purposes. Nor are we concerned with questions of corporate power or of duties to shippers, which frequently compel nice distinctions between public and private carriers. We have merely to determine whether Congress, in declaring the Hours of Service Act applicable 'to any common carrier or carriers, their officers, agents, and employees, engaged in the transportation of passengers or property by railroad,' made its prohibitions applicable to the Terminal and its employees engaged in the operations here involved. The answer to that question does not depend upon whether its charter declares it to be a common carrier, nor upon whether the state of incorporation considers it such; but upon what it does."

The court, after referring to the fact that the services rendered by the Terminal were public in their nature and of a kind ordinarily performed by a common carrier, proceeded to say:

"If these terminal operations were conducted directly by any, or jointly by all, of the ten railroad companies with which the Terminal has contracts, the operations would clearly be within the scope of the Hours of Service Law."

A similar case is Terminal Taxicab Co. v. District of Columbia, 241 U. S. 252, 36 Sup. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765.

Not only is the board a common carrier, but we think that the line of the State Belt Railroad is a highway of commerce. It receives from other railroads loaded cars containing freight shipped in interstate commerce, and delivers them either to the industries which it serves or to wharves for further transportation, and likewise it re-

ceives freight from the wharves and from the industries, and carries it on its road, and delivers it to the transcontinental roads which it serves, and for all of which services it receives compensation. At times, as the evidence shows, it is a line of road for the continuous shipment of freight through the state of California.

The defendants rely upon Kentucky & I. Bridge Co. v. Louisville & N. R. Co. (C. C.) 37 Fed. 567, 2 L. R. A. 289, in which it was held that a bridge company, which owned a bridge and, while owing no legal obligation to do so, voluntarily contracted to switch cars over its tracks between two or more railways, and collected switching charges merely for shifting cars from one line to another, was not a common carrier within the true meaning of section 1 of the Act to Regulate Commerce (Comp. St. § 8563), so that it could compel railroad companies to interchange traffic with it. What was there said as to the character of the bridge company was obiter, for the court had found that there was a want of physical connection at suitable and properly equipped stations to invoke the requirement of an equal facility for exchange of traffic, and in view of that finding it could make no difference whether or not the petitioner in the case was a common carrier. But there is this to be said by way of distinguishing that case from the case at bar. In that case the bridge company lacked one of the essentials of a common carrier. It did not undertake to carry for all indifferently. 4 R. C. L. 546. The defendants in the present case undertake for hire to transport the cars of all who choose to employ them. They are operating a public terminal, and it is well settled that terminal companies are common carriers, whenever they hold themselves out to be such, and constantly act in that capacity, and are so dealt with by railroad companies generally, and this irrespective of the manner in which they receive their compensation. United States v. Union Stockyards Co., 226 U. S. 286, 33 Sup. Ct. 83, 57 L. Ed. 226. In United States v. Sioux City Stockyards Co. (C. C.) 162 Fed. 556, affirmed (C. C. A.) 167 Fed. 126, it was held, under the provisions of the Twenty-Eight Hour Law (Comp. St. §§ 8651–8654) that a terminal railroad company owning no cars of its own, and transporting only the cars of other companies, is a common carrier. The decision was approved in United States v. Brooklyn Terminal, supra. A similar ruling was made in United States v. Chicago, B. & Q. R. Co. (C. C. A.) 293 Fed. 185. In Missouri Pac. R. Co. v. Wichita Wholesale Grocery Co., 55 Kan. 525, 40 Pac. 899, it is said:

"A railroad transporting * * * a carload of freight one mile, using a switch engine for motive power, is just as much a common carrier as if the distance were a thousand miles by regular freight * * * train. The fact that compensation for this particular service was paid by the St. Louis & San Francisco Railway Company, while it might render that company also responsible, could not relieve defendant company from its liability as a carrier."

We find no error. The judgment is affirmed.