NATIONAL COUNCIL OF RAILWAY PA-
TROLMEN'S UNION, A. F. OF L., et al.
v. SEALY et al.

Civil Action No. 302.

District Court, S. D. Texas,
Galveston Division.

Aug. 4, 1944.

Stone, Phipps & Dibrell, W. E. Stone, and Louis J. Dibrell, all of Galveston, Tex., for plaintiffs.

Terry, Cavin & Mills, and Ballinger Mills, all of Galveston, Tex., for defendants.

KENNERLY, District Judge.

Since about December 1, 1940, the City of Galveston, in this District and Division, has owned and operated properties known as the Galveston Wharf Properties (formerly operated by the Galveston Wharf Company), consisting of an extensive system of approximately 50 miles of railway tracks, locomotives, and other rolling stock, roundhouses, repair yards, grain elevators, warehouses, cotton sheds, and wharves, etc. Such system is handled by and is under the general control and direction of defendants, George Sealy et al., who are called Trustees. Such City and/or such Trustees have in their employ numerous switchmen, engine men, firemen, maintenance men, etc. Also approximately 70 watchmen. Apparently such switchmen, engine men, firemen, maintenance men, etc., and their Labor Unions, on the one hand, and such Trustees and City, on the other hand, are not in disagreement as to the coverage of the Railway Labor Act as amended June 21, 1934, 45 U.S.C.A. §§ 151 et seq., and as to wages, etc., thereunder. But when such watchmen and the Local and National Labor Union to which they belong called upon such Trustees to treat with them with respect to a wage controversy or scale of wages, etc., the Trustees took the position that such watchmen are regularly appointed, bonded and sworn police officers of the City of Galveston, and not within the coverage of such Act. This suit, to which the City has not been made a party, seeking to compel the Trustees to treat with Plaintiffs, followed. This is a hearing of Defendants' Motion to Dismiss and of the case on the merits.

The facts are substantially as follows:

(a) For many years prior to December 1, 1940, the Galveston Wharf Company, a private corporation, organized under the Laws of Texas, owned in part[1] and operated these properties. It employed, in substantially the same way as they are now employed by the Trustees and City, a large number of switchmen, engine men, firemen, maintenance men, etc.

(b) The Wharf Company, in like manner, also employed a number of watchmen, and under an Ordinance of the City of Galveston, dated October 7, 1920, such watchmen were appointed Police Officers by the City, but were paid by the Wharf Compa-

---

[1] During all or part of the time the City owned an interest in such properties, but they were operated by the Wharf Company.

ny.[2] After the City purchased and its Trustees took charge of the properties, such watchmen were paid by the Trustees out of funds belonging to the City of Galveston.

(c) The watchmen who served the Wharf Company and those who served and now serve the Trustees and City and who were as stated appointed police officers by the City of Galveston, gave Bond[3] and took

---

[2] Sections 1, 2, 3 and 4 of such Ordinance are as follows:

"Section 1. That the Board of Commissioners shall appoint special policemen or watchmen at private places of business and institutions for duty in and at such places of business and institutions, upon the request, and upon the recommendation of the owners or proprietors of such places of business and institutions and of the police and fire commissioner, which said special policemen or watchmen, while on duty in and at such places of business and institutions, shall have the power and authority of a regular police officer of the City of Galveston and they shall see that the ordinances of the city are complied with; but when not on duty in and at such places of business and institutions, for which they are appointed, their powers as such officers shall cease.

"Sec. 2. That any person, firm or corporation, desiring a special policeman or watchman, at or in his place of business and institution, shall cause the person desired to be appointed to make a written application to the police and fire commissioner containing substantially the same information and facts required to be contained in an application of persons desiring to be appointed regular police officers of the City of Galveston, which said application shall be endorsed and recommended by the person, firm or corporation desiring such appointment, and shall state in and at what place of business and institution such policeman or watchman is to serve. giving the boundaries thereof, if outside of the building, which application and recommendation shall be presented to the Board of Commissioners by the police and fire commissioner with his recommendation, and the board of commissioners shall, upon receiving such recommendations, act thereon, and if the Board of Commissioners act favorably upon such request and recommendations, and appoint such special policeman or watchman, such special policeman or watchman shall qualify by giving bond and taking the oath of office required to be given by the charter of the City of Galveston and the ordinances of the City to be given by the regular police officers, who thereafter, shall have the power and authority of a regular police officer of the City of Galveston, only in and at such place of business and institution named within the bounds named in his rec-

56 F.Supp.—46

ommendation and endorsement, while he is actively engaged in the discharge of the duties of special policeman or watchman at and in such place of business and institution and within the boundaries named in said recommendation, but in no other place, and such special policeman or watchman shall have no authority and shall not be permitted to carry arms while not on duty in and at such places of business and institutions.

"Sec. 3. That such special policemen or watchmen shall receive no salary from the City of Galveston, but shall be paid by the person, firm or corporation requesting his appointment, and he shall be subject to removal from office by the Board of Commissioners of the City of Galveston at any time and for any cause which it may deem sufficient for his removal.

"Sec. 4. That while such special policemen or watchmen are on duty in and at such places of business and institutions they shall be subject to the rules and regulations of the police department of the City of Galveston and all ordinances of the City of Galveston relating to the management and control of such department."

[3] The bonds are all substantially the same as one offered in evidence, as follows:

"The State of Texas, City and County of Galveston.

"Know All Men by These Presents: That we, Willie Dennis, as principal, and American Indemnity Company, Galveston, Texas, as sureties, of the State and County aforesaid, are held and firmly bound unto the City of Galveston in the sum of FIVE HUNDRED AND 00/100 DOLLARS ($500.00), good and lawful money, for the payment of which sum, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly, severally and firmly by these presents.

"In testimony whereof, we hereunto subscribe our names and affix our scrolls for seals, this the 14th day of March, A.D. 1944.

The condition of this obligation is such, that whereas the above named bounden has been appointed a Special Officer while in the employ of the Galveston Wharves under the provisions of Article 107 of the Supplement to Revised Ordinances of the City of Galveston.

"Now if the said Willie Dennis shall well, truthfully and faithfully discharge the duties of Special Officer of the City of

the oath of office [4] required of all police officers. They are, however, not directly under the supervision and control of the Chief of Police of the City of Galveston, but are under the supervision and control of the Captain of Wharf Police, who is himself a regularly sworn and bonded police officer.

(d) The appointment of the watchmen as police officers is made by the Mayor and Board of Commissioners of the City,[5] but neither the Mayor nor the Board, nor the Commissioner of Fire and Police, exercise direct supervision over them, but, as stated, they are supervised and directed by the Trustees through the Captain of Wharf Police.

(e) After such watchmen have given bond and taken the oath of office, there is issued to each by the City a Certificate of Appointment.[6]

(f) The City of Galveston is authorized to own and operate these properties under its Charter, and may do so through Trustees.[7] When it acquired the properties, provision was made for the appointment from time to time of Trustees, some being appointed by the creditors of the City and some by the City itself. They were given full plenary powers with respect to the management of such properties.

■■ 1. That this Court has jurisdiction to require Defendants to treat with Plaintiffs if the wage controversy between them comes within the coverage of the Railway Labor Act seems settled. Virginian R. Co. v. System Federation No. 40 et al., 4 Cir., 84 F.2d 641. Most of the cases cited by Plaintiffs [8] throw some light on the question of coverage, but are not controlling. United States v. California, 297 U.

---

Galveston under said appointment then this bond and Obligation shall cease and become void; otherwise to be and remain in full force and effect.

"Principal (Signed) Willie Dennis
"Sureties: American Indemnity
Company
(Signed) P. A. Butler SEAL
P. A. Butler Attorney-in-Fact
"Approved:
"Signed) Geo. W. Fraser,
Mayor-President.
"(Signed) A. D. Dolson
Commissioner Finance and Revenue.
"(Signed) O. E. Casey
Commissioner of Streets and Public
Property. Water Works and
Sewerage. Fire and Police."

4 The oaths of office are all substantially the same as one offered in evidence, as follows:

"Oath of Office

"I, Willie Dennis, do solemnly swear (or affirm), that I will faithfully execute the duties of the office of Special Officer while in the employ of the Galveston Wharves of the City of Galveston of the State of Texas, and will to the best of my ability, preserve, protect and defend the constitution and laws of the United States and of this State; and I furthermore solemnly swear (or affirm), that I have not directly nor indirectly paid, offered, or promised to pay, contributed, nor promised to contribute any money, or valuable thing, or promised any public office or employment to secure my appointment, so help me God.

"(Signed) Willie Dennis

"Sworn to and subscribed before me this 13th day of March, 1944.

"(Signed) L. R. Patton

"Notary Public in and for Galveston County, Texas.

"L. R. Patton, Galveston, Texas.
"Notary Seal."

5 The form of order generally used is as follows:

"Acting upon the request of E. E. Williams, Captain of the Wharf Police, and upon motion of Comr. Casey, seconded by Comr. Dolson and carried, it was ordered that the following named persons be appointed special officers in the employ of the Galveston Wharves under the provisions of the ordinance governing for the unexpired term of the present administration."

6 Such Certificates are substantially the same as the following:

"Galveston, Texas
"Office of City Secretary
"To Whom It May Concern:

"This is to certify tht E. E. Williams has been appointed a Special Officer by the Board of Commissioners of the City of Galveston under the provisions of Article 107 of the Supplement to Revised Ordinances of the City of Galveston, while in the employ of Galveston Wharves during the unexpired term of the present administration, and that he has qualified by filing in this office his bond and oath of office.

"Mildred M. Oser, City Secretary.
"Date: June 24th, 1943."

7 Sections 100 and 101 of Galveston Charter, and Articles 1115 and 1116 of Vernon's Annotated Texas Statutes.

8 Helvering v. Powers, 293 U.S. 214, 55 S.Ct. 171, 79 L.Ed. 291; A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S. Ct. 1116, 86 L.Ed. 1638; Ohio v. Helvering. 292 U.S. 360, 54 S.Ct. 725, 78 L.Ed. 1307; Slover v. Wathen, 4 Cir., 140 F.2d 258; Walling v. Sondock, 5 Cir., 132 F.2d 77.

S. 175, 56 S.Ct. 421, 80 L.Ed. 567; State of California v. Latimer, 305 U.S. 257, 59 S.Ct. 166, 83 L.Ed. 159, and State of California v. Anglim, 9 Cir., 129 F.2d 455, of course, settle it that a railroad, etc., owned by the State or as here by a City which is an agency of the State is, under certain circumstances and perhaps generally speaking, within the coverage of the Act. But there are presented here facts which I think clearly show that Plaintiffs and Defendants and the wage controversy between them are not within such coverage. Here, while the City and Trustees (an agency of the State) saw fit to employ switchmen, engine men, firemen, maintenance men, etc., in the ordinary way that railroad companies generally employ such employees, when it came to what they apparently regarded as more important employees, i. e., watchmen who were charged with the higher duty of the policing and preservation of its properties, they chose to employ only its own regularly appointed, bonded and sworn officers. My conclusion is that they are not within the coverage of the Act, and that it was not the intention of the Congress to place them within such coverage.

There is a clear line of demarcation between the switchmen, engine men, firemen, maintenance men, etc., on the one hand, and the watchmen, on the other hand. The duties of the first named are to operate the properties and make money for the City. The duties of the watchmen are to police and preserve the properties of the City. It is entirely consistent and reasonable for the City to have this last named important duty of policing and protecting its properties performed by its own appointed, bonded and sworn officers. It is entirely consistent and reasonable for the City, in the protection of its properties, to exercise its governmental functions, rather than its proprietary functions.

The fact that such watchmen are not under the immediate direction and control of the Chief of Police of the City, as are other policemen, does not matter. They are nevertheless officers appointed by the City, have given bond as such to the City, and have taken the oath of office required to be taken by officers under the Constitution and other Laws of Texas. They are officers of the State. Articles 998 and 999, Vernon's Civil Statutes of Texas. Article 346, Penal Code and Article 36, Code Criminal Procedure (Vernon's Annotated Criminal Statutes). Ex parte Preston, 72 Tex. Cr.R. 17, 161 S.W. 115, 116; Rusher v. Dallas, 83 Tex. 151, 18 S.W. 333; Lehon v. City of Atlanta, 242 U.S. 53, 55, 37 S. Ct. 70, 61 L.Ed. 145.

Neither does it matter that their duties are to be performed on the wharf property, and not about over the City, nor that they are permitted to carry arms only while on such properties. This does not change their status as Officers.

Believing that such watchmen and their relations with the City and its Trustees are not within the coverage of the Act, I conclude that neither the City nor its Trustees are compelled by such Act to treat with Plaintiffs with respect to their wages. Whether such watchmen come under any of the provisions of the 1937 Act of the Texas Legislature (Articles 1583 et seq., Vernon's Annotated Criminal Statutes, Penal Code), regulating the employment, hours of labor, and wages of certain policemen, does not seem necessary to decide.

As has been stated, the case was submitted on Defendants' Motion to Dismiss and at the same time tried on the merits, all the evidence being heard. It seems proper to dismiss Defendants' Motion to Dismiss and to render Judgment for Defendants on the merits.

Let proper decree be drawn and presented.