REEVES, INC., Appellee,

v.

Tom KELLEY, Stan Frank, John E. Phelps, Al Sandvig and Dave Johnson, Members of the South Dakota Cement Commission, Appellants.

MULLINAX CONCRETE SERVICE COMPANY, a corporation, Appellee,

v.

Tom KELLEY, Stan Frank, John E. Phelps, Al Sandvig and Dave Johnson, Members of the South Dakota Cement Commission, Appellants.

RUSSELL'S READY MIX, INC., a corporation, Appellee,

v.

Tom KELLEY, Stan Frank, John E. Phelps, Al Sandvig, and Dave Johnson, Members of the South Dakota Cement Commission, Appellants.

Nos. 78–1578, 78–1720 and 78–1721.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 19, 1978.

Decided Nov. 7, 1978.

Donald R. Shultz of Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, S. D., for appellants.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, S. D., argued, and Dennis M. Kirven of Kirven & Kirven, Buffalo, Wyo., on brief, for appellees.

Before LAY, ROSS and McMILLIAN, Circuit Judges.

LAY, Circuit Judge.

In 1919 the State of South Dakota, as authorized by its constitution, created a cement commission by legislative charter to carry out the manufacture, distribution and sale of cement as "works of public necessity and importance." S.D.Const. art. XIII, § 10; S.D. Compiled Laws Ann. § 5–17–1, –2, –9. *See generally, Eakin v. South Dakota State Cement Comm'n*, 44 S.D. 268, 183 N.W. 651 (1921). In the past the Commission has operated a cement plant and has sold its products to out of state customers as well as to South Dakota residents. In recent months the demand for cement has risen sharply. Therefore, on June 1, 1978, the Commission reaffirmed a policy of supplying all South Dakota customers first and honoring all contract commitments, with the remaining volume being allocated on a first come, first served basis. As a result of this policy and the continuing cement shortage, the Commission refused to sell to out of state customers. Reeves, Inc., a Wyoming corporation, challenged this policy in federal district court. The district court, the Honorable Andrew Bogue presiding, found that such policy violated the Commerce Clause of the United States Constitution, U. S. Const. art. I, § 8, cl. 3, and enjoined its application to Reeves, Inc. Subsequently, Mullinax Concrete Service Co., a Wyoming corporation, and Russell's Ready Mix, Inc., an Iowa corporation, brought suit seeking a permanent injunction of the policy.[1] The court granted the requested relief in each case and permanently enjoined the Commission from taking any action to prohibit the sale of cement to prospective out of state purchasers because of their nonresidency. The State Cement Commission has filed this appeal.

---

1. These suits were necessary since following the court's action in *Reeves, Inc. v. Kelley*, No. 78–5060 (D.S.D. July 21, 1978), the Commission adopted a "prioritization" policy, whereby all customers, resident or nonresident, were allowed to purchase an amount equal to 50 per cent of the average amount they had purchased over the last three years. Implementation of that policy or of any other policy requiring out of state sales before the needs of South Dakota customers were met, except as to Reeves, Inc., however, was enjoined by a South Dakota circuit court as violative of the South Dakota Constitution and laws. The Commission obeyed, thus giving rise to *Russell's Ready Mix, Inc. v. Kelley*, No. 78–5073 (D.S.D. Sept. 22, 1978), and *Mullinax Concrete Service Co. v. Kelley*, No. 78–5074 (D.S.D. Sept. 22, 1978). Those cases were consolidated with *Reeves, Inc.* for argument and decision on appeal.

We reverse and remand to the district court with directions to vacate the injunctions.

The federal district court in issuing injunctive relief held:

> The South Dakota Cement Commission's policy of refusing to serve the Plaintiff simply because the corporation is not an entity within the boundaries of the State of South Dakota is declared to be a violation of the Commerce Clause and the Privilege [sic] and Immunities Clause of the United States Constitution.

*Reeves, Inc. v. Kelley,* No. 78–5060, slip op. at 3 (D.S.D. July 21, 1978).

Judge Bogue concluded:

> A state may not compel the confinement of their resources to their own people, whenever such hoarding and confinement impedes interstate commerce.
>
> This Court is aware of the fact that the South Dakota Cement Plant is publicly owned by the citizens of this state, for public use. It should be noted, however, that the Commission has made an election to become part of the interstate commerce system. Such an election was made when the Commission began selling to out-of-state entities, in competition with private industry. As a result of that election, the South Dakota Cement Plant is required to comply with the mandates of the United States Constitution, including the Commerce Clause and the Privilege [sic] and Immunities Clause.

*Id.* at 1–2.

The commerce clause [2] has been interpreted as primarily intended to inhibit the power of the states to interfere with the natural functioning of the interstate market through burdensome regulation or prohibition. *See City of Philadelphia v. New Jersey,* —— U.S. ——, 98 S.Ct. 2531, 2535–37, 57 L.Ed.2d 475 (1978) [3]; *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 806, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976). In the instant case South Dakota has not attempted to pass any regulation or prohibition on any private industry functioning in commerce. It has simply acted in a proprietary capacity as a seller of cement within the interstate cement market. Such activity is not the type of state action the commerce clause was intended to restrict.

In *Hughes v. Alexandria Scrap Corp.,* the State of Maryland in an attempt to rid the landscape of junk cars paid a "bounty" to scrap processors for the destruction of inoperable automobiles over eight years old. An out of state processor was required to show title documentation in order to receive the bounty, whereas an in state processor was not. The result was a reduction in the bounties secured by out of state processors from the State of Maryland. A three judge district court concluded that the act constituted an impermissible burden on interstate commerce. The Supreme Court reversed, holding that the State of Maryland did not prohibit or regulate commerce but merely entered the market as a purchaser. In so holding the Court said:

> Nothing in the purposes animating the Commerce Clause prohibits a State, in the absence of congressional action, from participating in the market and exercising

2. We discuss application of the commerce clause only. The plaintiffs are all corporations, and corporations are not citizens within the meaning of the privileges and immunities clause, U. S. Const. art. IV, § 2, cl. 1. *Asbury Hosp. v. Cass County,* 326 U.S. 207, 210–11, 66 S.Ct. 61, 90 L.Ed. 6 (1945); *Paul v. Virginia,* 75 U.S. (8 Wall.) 168, 177, 19 L.Ed. 357 (1868).

3. In *City of Philadelphia v. New Jersey,* a decision relied upon by the plaintiffs, the Court struck down a New Jersey statute which prohibited importation of solid or liquid waste collected outside of New Jersey. The case stands for the principle that a state may not prevent shipment of privately owned articles of trade in interstate commerce on the ground of local need or command. *See also Pennsylvania v. West Virginia,* 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117 (1923); *Oklahoma v. Kansas Natural Gas Co.,* 221 U.S. 229, 31 S.Ct. 564, 55 L.Ed. 716 (1911). The Court specifically observed in *City of Philadelphia,* however:

> We express no opinion about New Jersey's power, consistent with the Commerce Clause, to restrict to state residents access to state owned resources . . . ..

98 S.Ct. at 2537 n. 6.

the right to favor its own citizens over others.

426 U.S. at 810, 96 S.Ct. at 2498 [4].

The State of South Dakota, in carrying out this proprietary activity, possesses the rights of and is subject to the regulatory restrictions on any private business making marketing decisions. *See National League of Cities v. Usery,* 426 U.S. 833, 854 n.18, 96 S.Ct. 2465, 2475, 49 L.Ed.2d 245 (1976); *United States v. California,* 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567 (1936). If a private industry had chosen to market the cement, it would be difficult to argue that the United States Constitution would compel it to sell to nonresidents if it did not so choose. We fail to see that the State of South Dakota must be treated any differently, simply because it is a public body rather than a private industry. The mere fact that it at one time sold cement to out of state entities does not place greater restrictions on its business dealings. South Dakota could have chosen never to make its cement available to out of state customers, and the constitutional question, had it arisen, would not be analytically different from that presented by its recent decision to prefer its residents. *Hughes v. Alexandria Scrap Corp., supra,* 426 U.S. at 809, 817, 96 S.Ct. 2497 (Stevens, J., concurring). Nothing in this range of possible marketing decisions affects the initial question whether the commerce clause limits South Dakota's power to choose whether, to whom, and on what conditions to sell its goods. We hold that the commerce clause does not.

■ While a state is similar to' private business when it participates in the market in a purely proprietary capacity, it is also somewhat different. As a government providing a public service and utilizing the money and resources of its residents, it has a right and perhaps even an obligation to consider their common good and conserve their resources so long as it does not do so by attempting to regulate or control commerce among the states. *Toomer v. Witsell,* 334 U.S. 385, 409, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948) (Frankfurter, J., concurring). The factual background in these cases does not indicate that South Dakota has attempted to control channels of interstate commerce. Accordingly, we hold the commerce clause does not prohibit the State of South Dakota "from participating in the market and exercising the right to favor its own citizens over others." *Hughes v. Alexandria Scrap Corp., supra,* 426 U.S. at 810, 96 S.Ct. at 2498. *Cf. American Yearbook Co. v. Askew,* 339 F.Supp. 719 (M.D.Fla.), *aff'd mem.,* 409 U.S. 904, 93 S.Ct. 230, 34 L.Ed.2d 168 (1972) (upholding the validity of state printing statutes which required all public printing of the state to be done in the state).

The causes are remanded with directions to the district court to vacate the injunctive relief issued and to dismiss the respective complaints in each case for failure to state a claim for relief.

It is so ordered.

---

4. The fact that Maryland was a purchaser and South Dakota a seller is not a significant difference between *Hughes* and this case, since regulation of interstate products going either into or out of a state may offend the commerce clause. *Hughes v. Alexandria Scrap Corp., supra,* 426 U.S. at 808, n.17, 96 S.Ct. 2497.