## FERGUSON v. PHILADELPHIA TRANSP. CO.

## FELLERS v. PHILADELPHIA TRANSP. CO.

### Civ. A. Nos. 10123, 12567.

United States District Court
E. D. Pennsylvania.

Dec. 30, 1952.

Richter, Lord & Farage, Philadelphia, Pa., for plaintiffs.

J. B. H. Carter, Philadelphia, Pa., for defendant.

GANEY, District Judge.

This matter involves two separate actions, one by William C. Ferguson and the other by the administratrix of the estate of Lonnie Moore against the Philadelphia Transportation Company, the former having been injured and the latter having been killed while in the employ of said company. The case arises on a motion to dismiss by the defendant, the Philadelphia Transportation Company, and the sole question at issue in the matter is whether the provisions of the Federal Employers' Liability Act are pertinent.[1]

The defendant operates a system of street railway and bus lines in the City of

---

1. The Act of April 22, 1908, 35 Stat. 65, as applicable here provides: "Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow * * *; and, if none, then of the next of kin dependent upon such employee * . * *." 45 U.S.C.A. § 51. By amendment of August 11, 1939, 53

Philadelphia, which on December 31, 1950 showed 523.279 miles of track in route service, 47.6 miles of trackless trolleys and 651.3 miles of bus route. Of the track mileage over which the defendant operates, is the Delaware River Bridge high-speed line, which is 5.2 miles long, 1.3 of which lies outside of the Commonwealth of Pennsylvania and represents the distance from the center of the Delaware River Bridge to a terminal at the Broadway Station in Camden, New Jersey. This is the only operation which the defendant conducts outside of the Commonwealth of Pennsylvania and represents approximately 1% of its entire operation. In 1950, likewise, the total passengers carried by the defendant company were 827,620,634, and the Bridge line carried 8,877,115 passengers, or 1.07%. The tariffs of the defendant are filed with the Public Utility Commission of Pennsylvania, and none are filed in New Jersey or with the Interstate Commerce Commission, the latter having affirmatively asserted it has no jurisdiction of the fares charged by the defendant. A single system of tickets and interchange privileges exists for the entire system, including the Delaware River Bridge, and under an agreement of the lease with the Delaware River Bridge Joint Commission, the defendant collects a Bridge toll charge (2 tokens for 5¢) from passengers using the Bridge line, which is turned over in its entirety to the Delaware River Bridge Joint Commission. The defendant has no interchange privileges with anyone on the Camden or New Jersey side.

There are no trolleys or busses operated to Camden by the defendant, and it has no connection with any bridge systems leaving from Pennsylvania to New Jersey. No freight or mail is carried on any part of the defendant's system, although under Pennsylvania law the street railways chartered as common carriers are required upon demand of the United States Government

to carry mails at a price mutually agreed upon, or if no agreement, the sum is to be fixed by the Public Service Commission. Act of April 22, 1909, P.L. 114 § 1, 67 P.S. § 1248.

■■ An examination of the authorities which have considered the question of whether street railway companies may be brought under the regulation of the Federal Employers' Liability Act, supra, hold that the length of its road or its track is not to be considered controlling in the determination of whether the Act is applicable, United States v. Sioux City Stock Yards Co., 8 Cir., 162 F. 556, and the converse is equally true that it does not of itself compel a finding that a common carrier by railroad exists; for while it is true that certain defendant routes extend for short distances beyond the limits of the City of Philadelphia and that it does operate some twenty-six cars owned by the Delaware River Bridge Joint Commission under an agreement with that body over the Bridge and for a distance of about 1.2 miles from the center line of the Bridge to the Broadway Station in Camden, New Jersey, these locations are for the purposes of transportation practically part of the City of Philadelphia and are but extensions of the city streetcar system. A careful reading of the cases gives the Court this view, as evidenced in Mangum v. Capital Traction Co., 59 App.D.C. 241, 39 F.2d 286, and cited with approval in Keffer v. Capital Transit Co., 87 U.S.App.D.C. 13, 183 F.2d 808, where the facts are closely analogous to the situation here in question and which point up the difference between a street railway and a railroad or common carrier by railroad as was the case in Washington Railway & Electric Co. v. Scala, 244 U.S. 630, 37 S.Ct. 654, 61 L.Ed. 1360, pressed upon us for consideration by the plaintiff.

Defendant's motion to dismiss in each action is granted.

Stat. 1404, the following was added to the above: "Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substan-

tially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."